## IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
## IN AND FOR PINELLAS COUNTY, FLORIDA
### CIVIL DIVISION

THOMAS BEGLEY, individually, and as
President and on behalf of the
GRAND PRIX FOUNDATION OF
ST. PETERSBURG, INC., and
THOMAS BEGLEY AND
ASSOCIATES, a Florida corporation

        Plaintiffs,

v,

DOVER MOTORSPORTS, INC., as
real party in interest, and a Delaware
corporation; CHAMPIONSHIP AUTO
RACING TEAMS, INC., a Delaware
corporation; OPEN WHEEL RACING
SERIES, LLC, a Delaware Limited Liability
Company; OPEN WHEEL ACQUISITION, INC.,
a Delaware Corporation; GRAND PRIX
ASSOCIATION OF LONG BEACH, a California
corporation; the CITY OF ST. PETERSBURG,
a municipal corporation; and
CHRISTOPHER R. POOK,

        Defendants.
_____/

8:04-CV-405-T-30 EAJ

**Jury Trial Demanded**

Case No.: 03009606CI-8

Division:

**FILED**
3-3-04
Date                      Time
CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

## COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF
## AND ELECTION OF JURY TRIAL

### PARTIES

1.      Thomas Begley is and was at all material times a resident of Pinellas County, Florida.

2.      Thomas Begley and Associates, Inc., is and was at all material times hereto a Florida

corporation with its principal place of business in Pinellas County, Florida



Exhibit 1

3.      The Grand Prix Foundation of St. Petersburg, Inc., is and was at material times hereto a not for profit corporation established to promote and support a street racing event in St Petersburg, Florida known as the Grand Prix of St. Petersburg.

4.      Dover Motorsports, Inc., is and was at all material times hereto a Delaware corporation engaged in business in St. Petersburg, Florida, acting through its agents, a wholly owned subsidiary known as Grand Prix Association of Long Beach, Inc., and through Christopher R. Pook.

5       Grand Prix Association of Long Beach, Inc., is and was at all material times hereto a California corporation, a wholly owned subsidiary of Dover Motorsports, Inc., and acted on behalf of Dover Sports, Inc., being totally within the control of Dover Motorsports, Inc., and, at all times hereto, the decisions, actions, and representations hereinafter discussed were made by Dover Motorsports, Inc., not Grand Prix Association of Long Beach, Inc.

6       Championship Auto Racing Teams, Inc., is a Delaware corporation, and was at all material times hereto engaged in business in St. Petersburg, Florida, acting for itself, and in concert with Dover Motorsports, Inc. Championship Auto Racing Teams, Inc., sanctions street racing events in St Petersburg and elsewhere around the country.

7       Open Wheel Racing Series LLC is a specially formed entity whose principal business is to acquire Championship Auto Racing Teams, together with License and Use Agreements with the City of St. Petersburg which were wrongfully acquired in violation of the contractual rights of the Plaintiffs in this cause, as set out more fully hereinafter.

8       Open Wheel Acquisition Corporation is a wholly owned subsidiary of Open Wheel Racing LLC formed for the purpose of effecting a merger with Championship Auto Racing Teams, so as to obtain the License and Use Agreements with the City of St. Petersburg which were

2

wrongfully acquired in violation of the contractual rights of the Plaintiffs in this cause, as set out more fully hereinafter.

9. Christopher R. Pook at all material times hereto was a resident of Long Beach, California, acting both on behalf of himself, Dover Motorsports, Inc., and Championship Auto Racing Teams, Inc. (CART). As more fully hereinafter alleged, Pook traveled to and engaged in business in Pinellas County, Florida.

10. The City of St. Petersburg is a Florida municipal corporation, organized and acting under the laws of Florida and is an indispensable party to this lawsuit as the City is a party to agreements which were fraudulently obtained. No monetary damages are sought against the City of St. Petersburg which was an innocent party in these matters, victimized by the misrepresentations of the co-defendants as further set forth herein. Begley cannot speak for the City, but would welcome joinder by the City in this lawsuit so the City can recover its damages and get its race back from Dover and CART.

## JURISDICTION AND VENUE

11. This court has jurisdiction of this cause as the amount in controversy exceeds $15,000.00

12. Venue is proper in Pinellas County, Florida, as the cause of action accrued in Pinellas County, Florida, and the injuries and damage complained of herein are and were suffered in Pinellas County, Florida, the plaintiffs being residents of Pinellas County, Florida, and the defendants engaging in and intending to engage in business in Pinellas County, Florida, namely the theft of Grand Prix of St. Petersburg from Thomas Begley and Thomas Begley and Associates, Inc., and the City of St. Petersburg.

3

13     This court has venue of this action as the injuries and actions complained of either took place in Pinellas County, Florida, or resulted in injury and damage to the plaintiffs in Pinellas County, Florida.

## FACTUAL ALLEGATIONS

14.     By the middle of 2001, Thomas Begley had worked for ten years to bring a street race to St. Petersburg. Begley personally and through Begley & Associates, Inc. had invested countless hours, civic and business contacts and well over $750,000.00 in out of pocket expenses which remain due and outstanding. At the time Tom Begley "sold" the race to CART and Dover, he dreamed of bringing and running a world class grand prix street racing event in and for the City and people of St. Petersburg.

15.     On April 26, 2001, Begley procured an Amended and Restated License and Use Agreement, Amended and Restated Real Estate License Agreement and an Amended and Restated Lease Agreement between his corporation, Thomas Begley and Associates, Inc., and the City of St. Petersburg. Copy of these agreements are Exhibit 1.[1] The first agreements between Begley and the City of St. Petersburg had been procured by him on February 2, 1994, and consisted of a License and Use Agreement with a right to hold professional automobile races on the streets of St. Petersburg as well as a Real Estate License Agreement and Lease Agreement for storage of race materials at the public works complex at 1635 3rd Avenue North, and the old fire headquarters located at 1429 Arlington Avenue North.

---

[1] There has been a claim by Dover that many of these exhibits are confidential and/or proprietary. Therefore, the exhibits are not now attached to this Complaint but will later be submitted under seal to the Court for its instruction.

16.    The Amended and Restated License and Use Agreement among other things provided that Thomas Begley and Associates, Inc., be under contract with a sanctioning body (specifically contemplating CART) by December 31, 2001, or the Agreement would become null and void.

17.    Following the execution of the April 26, 2001, Amended and Restated License and Use Agreement, Thomas Begley continued working to achieve the sanctioning necessary and as required by that Agreement.

18.    Thomas Begley entered into a series of negotiations with Christopher R. Pook, who at that time was an employee of Dover Motorsports, Inc., but who, on or before November 28, 2001, advised the Mayor of St. Petersburg among others, that he was being pursued by and contemplating employment as CEO of CART.

19    Thomas Begley's negotiations with Pook and Dover and through Pook both Dover and CART, contemplated and required certain fundamental requirements regarding which Pook, CART, and Dover were well aware:

a)    Thomas Begley would continue to be involved in and actively participate in the management operations of the Grand Prix of St. Petersburg;

b)    Dover Motorsports was made aware of Thomas Begley's outstanding debts to procure the racing event, and the consideration to Begley would be sufficient so that all creditors could be satisfied;

c)    A community foundation would be established, eventually the Grand Prix Foundation of St. Petersburg, Inc., through which community support and energy would continue to be generated and which would provide charitable and other services related to the racing event which would be supported by Dover Motorsports;

5

d) Thomas Begley would have and continue to have a long term relationship with the Grand Prix of St. Petersburg both to protect the community's interest in the event and to assure the realization of his dream, his livelihood and the repayment of his creditors.

20.    The License and Use Agreement with the City of St. Petersburg was and is valuable. For example, CART recently paid some $1.2 million and assumed $4.6 million in liabilities to obtain such a license and use agreement in Miami, Florida, for the Grand Prix of the Americas.

21.    During the negotiations leading up to the execution of the Fee Agreement on October 26, 2001, Exhibit 2, between Grand Prix Association of Long Beach and Thomas Begley, Begley was led to believe by Pook, Dover Motorsports, and CART that Begley's goals, requirements, and purposes would be met and that the Fee Agreement was just the first agreement between Tom Begley and Dover Motorsports and that Begley would become an employee of Dover Motorsports (Dover) for the purpose of continuing to manage and supervise the Grand Prix of St Petersburg.

22    The following specific representations, which turned out to be false, and which were knowingly false at that time they were made and made for the purpose of inducing Begley to act, were made as follows:

a) On June 11, 2001, Tom Begley, through a mutual friend, found that Chris Pook wanted to talk to him. Tom Begley reached Chris Pook and had his first face-to-face discussion with him August 14, 2001, when a lunch meeting at the Renaissance Vinoy Hotel between Tom Begley and Pook (along with mutual friend Steve Edwards) took place;

b) Pook at that meeting assured Tom Begley that in the first year of the event the event would not only break even, but would in fact make "a lot of money." In addition, Pook assured Tom Begley that the first year of the event would be 2003;

6

c) In the afternoon of August 14, 2001, Mayor Rick Baker, Pook, Tom Begley, Ken Welch, Joel Giles, Steve Edwards and Rick Mussett had a further meeting regarding bringing the race to St. Petersburg. This meeting took place on the 20th floor of the Bank of America building in downtown St. Petersburg in the offices of Carlton Fields, a prominent law firm. At that time Carlton Fields was representing Tom Begley. At that meeting there was a presentation on economic development, the Mayor promoted the City of St. Petersburg to Chris Pook, and Chris Pook promoted the race to the Mayor. It was decided that the event would be known as the Grand Prix of St. Petersburg. No specific discussions regarding finances were conducted. There was a conceptual decision that the race should go forward;

d) On August 15, 2001, following the conceptual meeting of August 14, 2001, Tom Begley faxed to Pook at Dover a resume along with a summary of Tom Begley's contributions to the event and the contributions of Thomas Begley and Associates, Inc. The fax is Exhibit 5. Included in that list is the License Agreement, capital assets, market knowledge and relationships, volunteer database, Real Estate Rental Agreements, 2002 book of business and so forth. Conservatively the value of the assets which Begley and Associates contributed to Dover is in excess of one million dollars ($1,000,000.00).

e) The next day, anxious to make a deal, Pook on behalf of Dover faxed a two page letter to Tom Begley requesting copies of various documents and information. That letter is Exhibit 6;

f) On August 22, 2001 Pook mailed to Begley a Non-Disclosure Agreement which he wanted Tom Begley to sign. Copy of that Agreement is Exhibit 7;

g) On September 11, 2001 Begley and Pook met once again at the Renaissance Vinoy

Hotel and at that time Pook presented to Begley a term sheet which contemplated that Begley would

receive ten percent of the pre-tax, post depreciation, post one year start up costs, gross profits for

each year the event was to be operated, among other things. In addition, Begley was to be chairman

of the Grand Prix of St. Petersburg and was assigned to renegotiate the agreements with the City of

St. Peterburg to accomplish the running of the race under the auspices of the Grand Prix Association

of Long Beach on behalf of Dover Downs Entertainment (Dover). A copy of the memo from

Christopher R. Pook to Tom Begley of September 11, 2001 is Exhibit 8. Tom Begley faxed to Chris

Pook a memorandum which set forth the understanding of the parties that,

> "We both understand the employment as Manager was critical to allowing me to move forward and agree to the percentages to get our deal done. I believe you also know that being involved in management is important to me and has its genesis in my long-term commitment to producing a successful Grand Prix event in St. Petersburg and in meeting my short-term financial obligations."

A complete copy of this fax memo is Exhibit 9. Neither Pook, Dover nor CART ever advised

Begley that this pre-condition was not achievable: they continued to mislead and deceive him.

h) On October 18, 2001, Pook assured Tom Begley that year one results or bottom

line would be between $2.5 million and $3.5 million, net before taxes, of which Tom Begley was

to receive ten percent.;

i) On October 18, 2001, Pook faxed to Begley a pro forma, Exhibit 3 which

substantiated this statement and, the pro forma which eventually became part of the Fee Agreement,

Exhibit 4, contained the same numbers and only changed the limiting phrase, "actual results may

vary" which did not appear in the document as initially faxed to Tom Begley

23. Tom Begley and Dover had an impasse around September 11, 2001; Begley in order to earn a living and pay off his debts insisted on a percentage of gross. However, Pook and Dover and CART were only willing to provide a percentage of net. To resolve that impasse, Pook offered an illusory $120,000 a year post as General Manager of the event.

24. In return for assurances that the "at will" employment was not really at will but would be co-terminus with the Fee Agreement, Tom Begley did not insist upon earnest money, an annuity, or upon repayment of his outstanding obligations.

25. On or about September 11, 2001, Begley was led to believe by Pook and Dover that he, Pook and Dover were "wooing" CART. CART insisted upon a Letter of Intent with the City of St. Petersburg by December 15, 2001, or else CART would begin negotiations with an Alabama group to run a race at the Florida Fairgrounds in Tampa. In reality, CART used the Alabama group as a "stalking horse", as CART (through its major shareholders) had already begun preliminary discussions with Pook to become CEO of CART, which he in fact became, in December of 2001, and Pook used the CART "stalking horse" as leverage over Begley and the City of St, Petersburg, when he well knew that CART intended to execute and enter into a deal with the City of St Petersburg because Pook by that time was effectively acting on behalf of CART, which he did not disclose.

26. On September 17, 2001 Pook wrote a Dear Tom letter advising Tom that the Fee Agreement was in process and that Tom would become an employee of Dover under standard terms and conditions. A copy of this Fee Agreement is Exhibit 10. This is the first draft of the Fee Agreement.

27.    On October 1, 2001, Tom Begley and Pook had a telephone conference in which Pook and Begley discussed a planned meeting for October 3, 2001 and the attendees: Dennis McGlynn, CEO of Dover, John Lopes, Vice-President, Race Operations, CART, Christopher Pook, Tom Begley, and St. Petersburg Mayor Rick Baker and his senior staff, including Rick Mussett and Kevin Dunn.

28.    On October 2, 2001 there was another telephone conference between Pook and Tom Begley  There was additional discussion about the meeting planned for the next day.

29    On October 2, 2001 on behalf of Tom Begley, Jim Rowe, who was then Tom Begley's lawyer, faxed a letter to Klaus Belohoubek, General Counsel for Dover, stating in part, that the Fee Agreement should require the Grand Prix Association of Long Beach "provide support and funding for this organization [the Foundation] in order that Mr. Begley can carry out his obligation to provide year round visibility to promote the company and the event." Copy of this letter is Exhibit 11

30.    Following the fax letter of October 2, 2001, on October 3, 2001, the meeting with the City took place.  On October 2, 2001, Belohoubek had agreed to support the Foundation and agreed to support Mr Begley.  Copy of the Belohoubek letter of October 2, 2001 is Exhibit 12.

31    On October 2, 2001, Dover, CART and Begley were anxious to reach agreement in principal before the meeting with City on October 3, 2001, as it was important for the parties planning to put on the race to have an agreement amongst themselves in order to obtain the City's support and agreement.

32.    On October 3, 2001, there was a meeting in City Hall with Mayor Rick Baker via telephone conference from Walt Disney World and Rick Mussett, Kevin Dunn, Tom Begley, Chris

Pook, Dennis McGlynn and John Lopes. The meeting was essentially for the City to advise Dover and CART that the City of St. Petersburg had the capacity, ability, and willingness to put on an event of the magnitude of the Grand Prix. At the conclusion of the meeting , Dennis McGlynn stated that he had never had a meeting with a city quite like that. Tom Begley supported Dover and CART because they had assured him of the essential conceptual terms of his deal, including his ability to be able to repay his creditors through his arrangement with Dover.

33.     Following the meeting with the City of St. Petersburg on October 8 ,2001, Christopher R. Pook, then the President and the Chief Executive Officer of the Grand Prix Association of Long Beach, Inc., a Dover Downs Entertainment company and soon to be Chief Executive Officer of CART, wrote to John Lopes, remarking that the meeting with the City was "an extremely productive meeting and I continue to be excited about the potential of the venue " A copy of that letter is Exhibit 13.

34.     On October 9, 2001, Belohoubek, General Counsel for Dover, e-mailed and faxed the Fee Agreement to James Rowe. Copy of this revised Agreement is Exhibit 14. The language added to that Agreement was a significant enticement and inducement for Begley to enter into the Fee Agreement, namely the underlined line  on page 2 of the Agreement, "the company shall provide Begley with appropriate support and funding to carry out his duties hereunder, including his duties relative to the non-profit organization referred to above." That language survived and is in the final Agreement executed by the parties and was a material misrepresentation by Dover, Pook and CART as those parties had no intent of continuing to provide Begley with appropriate support and funding, including support and funding for the Foundation.

11

35.    On October 15, 2001, in the context of discussing the hypothetical of what would happen if Tom Begley should be arrested, Belohoubek assured Jim Rowe, "as we discussed the other day when you asked for the Denver deal, we view the 'Chairmanship' as a critical element of our deal, particularly because we need somebody on the scene to be our eyes and ears in the St. Petersburg community. As I mentioned to you, our Denver Agreement has Mr. Gillett receiving a fee only as long as he is acting as the chairman." Once again Dover misled Begley into believing that the chairmanship of the event was the important, significant and a critical aspect of the event and that he would be receiving a substantial payment as chairman of the event  The letters between Belohoubek and Rowe of October 15 and 16, 2001 are Exhibit 15.

36.    On October 16, a further revised Fee Agreement, minus the pro forma, and minus the list of Begley's debts, was faxed to Tom Begley from Jim Rowe who had received it on October 15 from Belohoubek. That Fee Agreement is Exhibit 16.

37.    Following receipt of that Fee Agreement, Tom Begley had a telephone conversation with Pook on October 18, 2001, referenced above in paragraph 20(h), in which he was assured that the "bottom line" for the first year would be $2.5-$3.5 million net before taxes and that he would receive ten percent of that amount. In addition, Tom Begley received a fax on October 18, 2001, verifying and substantiating the numbers which Pook had represented to Tom Begley. Tom Begley had no reason to question those numbers as the course of conduct and dealings between him, Dover, CART, Grand Prix Association of Long Beach, and Pook had led him to erroneously believe that he was dealing with people of honor, decency and trustworthiness, whose word could be relied upon, which these defendants well knew  The notes of that telephone discussion and the pro forma as presented by Pook is Exhibit 17.

38.     On October 19, 2001, Tom Begley had another telephone conversation with Pook in which he discussed the funding for the Foundation. Pook assured Begley that the Foundation would have adequate funding from the event and that the costs for volunteers and other aspects were in the numbers previously furnished to Tom Begley. Pook further assured Tom Begley that his "at will" employment was a formality only; no one at Dover received "term" agreements. "We will honor the employee agreement every year the event is conducted," Pook falsely and fraudulently assured Begley. Copy of Tom Begley's notes of this telephone conversation is Exhibit 18.

39.     On October 26, 2001 Pook faxed to Jim Rowe another copy of the pro forma, this one with the language, "actual results may vary" but no where was there the cautionary language, "this is a big fraud."

40.     On October 26, 2001, Tom Begley, because of the false assurances, misrepresentations, frauds, and deceits heretofore outlined, executed the Fee Agreement, which as one sided as it is never-the-less promises to provide "Begley with appropriate support and funding to carry out his duties hereunder, including his duties relative to the non-profit organization referred to above."

41     In violation of this Fee Agreement, Dover has "terminated" Begley for alleged actions that Dover asserts are contrary to provisions of the Fee Agreement, and for objecting to Dover's breach of the Fee Agreement. Copy of letters from Belahoubek to Begley's counsel are Exhibit 19.

42.     In addition, Dover reneged on a promised $10,000 sponsorship for the foundation gala charity event The sponsorship was $5,000 in cash and $5,000 in Grand Prix event tickets to be distributed to African-American children's groups. The tickets were given to the Foundation and distributed, but the $5,000 cash payment was not paid by Dover, despite promises to the contrary.

43. The pro forma attached to the Fee Agreement indicates that Tom Begley would get $200,000 the first year plus the $120,000 salary; although Pook at all times knew that the race would not make money the first year but he never so advised Tom Begley.

44. No specific arrangement was made by or for Tom Begley or Begley and Associates to repay either his personal or corporate debt because of the false assurances, misrepresentations and deceits and practices by Pook, Dover and CART.

45. Tom Begley was led to believe that his employment would be co-terminus with the Fee Agreement which was co-terminus with the Event, which was to be twelve (12) years Tom Begley would then be able to recoup his out of pocket expenses as well as repay his outstanding debts, have a secure livelihood, and assure a proper and appropriate street race for the City of St. Petersburg

46. Tom Begley relied on the promises and assurances of Dover Motorsports, Pook, and CART in obtaining the cooperation of the City of St. Petersburg, in signing the Fee Agreement, and later accepting employment with Dover.

47. In fact, Tom Begley completed an application for employment on February 1, 2002. Copy is Exhibit 20. Tom would not have done so had he been aware of Defendants' true intent and plans.

48. Tom Begley relied on the assurances of Dover Motorsports, Pook, and CART in working for and obtaining approval by the City of a Letter of Intent between the City of St. Petersburg and Dover's subsidiary, Grand Prix Association of Long Beach, copy is Exhibit 21. That agreement also specifically benefits CART.

14

49.   Tom Begley worked for and was in large part responsible for obtaining this Letter of Intent based upon the false assurances, promises and representations of Dover, Pook and CART.

50.   In addition, Begley assisted in and was materially responsible for obtaining the License and Use Agreement between the City of St. Petersburg and the Grand Prix Association of Long Beach, Inc., which was executed on February 7, 2002, copy is Exhibit 22. Tom would not have done so had he been aware of the truth which had been concealed from him by Dover, CART and Pook.

51.   Similarly, Begley worked for and assisted in obtaining a Sanction Agreement between CART, Inc.. and Grand Prix Association of Long Beach, which was executed on March 18, 2002. Copy of this agreement is Exhibit 23.

52.   Thomas Begley and Associates is a party to an Amended and Restated Real Estate License Agreement and an Amended and Restated Lease Agreement between it and the City of St. Petersburg, Florida executed on April 26, 2001, copies are Exhibit 7. Dover has requested that these agreements be assigned to it and has demanded Thomas Begley and Associates assign these agreements to it even though such assignment is without any consideration whatsoever, as the consideration is illusory and fraudulent.

53.   It was only after Dover, CART, Grand Prix Association of Long Beach, and Pook (Pook having become CEO of CART on or about December 18, 2001) had achieved their goal of stealing the Grand Prix of St. Petersburg from Tom Begley, did Tom Begley gradually become aware that he had been misled and deceived. Essentially, Dover. CART, and Grand Prix Association of Long Beach, through Pook, got a multi-million dollar race for free.

15

54.    During the negotiations, Dover, CART, Grand Prix Association of Long Beach, and Pook materially misrepresented their true plans and intent which was to take over the St. Petersburg race, get rid of Begley, and do so without even reimbursing Tom Begley for his out of pocket expenses and debts incurred in bringing the race to St. Petersburg.

55.    If the true facts had been disclosed to Tom Begley by Dover, CART, and Pook, Tom Begley would not have procured the assignment of the License and Use Agreement to Grand Prix Association of Long Beach, would not have assisted in the procurement of CART's sanctioning for the race, would not have procured the cooperation of the City of St. Petersburg and its civic leaders, and would not have agreed to transfer his corporation's Real Estate License Agreement and Lease Agreement to Dover (through its subsidiary Grand Prix Association of Long Beach).

56    Tom Begley would also not have entered into the Fee Agreement under the terms and conditions described therein and thereunder without the false assurances of Dover, CART and Pook because that agreement effectively assures that Tom Begley will never be paid one red cent for his efforts, as the structure of the event is such that CART and Dover control the expenses.

57.    At no time until March of 2003 when Tom Begley was discharged as General Manager of the Grand Prix of St. Petersburg, did Dover, CART, Grand Prix Association of Long Beach, or Pook, fully reveal their true intent which was and had been to effectively swindle Tom Begley out the race in St. Petersburg, leaving Tom Begley with the dreams, debts and expenses accrued over ten years to bring the race to St. Petersburg while CART and Dover obtained all of the rights to the race in St. Petersburg. In other words, CART and Dover essentially for free obtained the Grand Prix of St. Petersburg, leaving Tom Begley and his corporation without any hope of

paying back his creditors or recouping the hundreds of thousands of dollars which he and the corporation expended over the years to bring the race to St. Petersburg.

58.      In addition , under the Fee Agreement, Dover through its subsidiary Grand Prix Association of Long Beach is obligated to pay Tom Begley as well as support the Grand Prix Foundation but, Dover, consistent with its fraudulent course of conduct, has taken the position that it does not have an obligation to provide sufficient funding to either Begley or the Grand Prix Foundation, refuses to do so, and has left the Grand Prix Foundation as well as the civic leaders of St. Petersburg and the City of St. Petersburg as helpless as a turtle on its back

59.      On information and belief, based on the Schedule 13D filed with the Securities and Exchange Commission on December 2, 2003, Open Wheel Racing Series LLC is a specially formed entity whose principal business is to acquire CART, and Open Wheel Racing Acquisition Corporation is a wholly owned subsidiary of Open Wheel Racing formed for the purpose of effecting a merger with CART, together with the License and Use Agreements wrongfully obtained in violation of the contractual rights of the Plaintiffs.

## FIRST CAUSE OF ACTION

### (Fraud)

60.      Tom Begley reasserts and realleges paragraphs 1-59.

61      Thomas Begley and Thomas Begley and Association, Inc (hereinafter collectively Tom Begley) assigned their rights and assisted the defendants in obtaining the License and Use

Agreement with the City of St. Petersburg because of representations made by the defendants which were not true.

62.    Tom Begley could not have ascertained the truth of these representations.

63.    Tom Begley relied upon the falsities, falsehoods and misrepresentations of the defendants, Pook, Dover, and CART.

64.    Tom Begley would have not entered into the Fee Agreement with Grand Prix Association of Long Beach had the defendants told Tom Begley the truth.

65.    Tom Begley entered into that Fee Agreement because of the false representations which where made by the defendants Dover, CART, Pook and Grand Prix Association of Long Beach.

66.    Tom Begley could not have ascertained the truth or falsity of those misrepresentations.

67.    Tom Begley relied upon those misrepresentations in entering into the Fee Agreement

68.    Tom Begley was defrauded by Defendants Dover, CART, Pook and Grand Prix Association of Long Beach.

69.    Tom Begley has been harmed as a result of entering into the Fee Agreement

70.    Tom Begley would not have entered into the employment contract with Dover had Dover, Pook and CART told him the truth.  Begley entered into that contract because of misrepresentations by Dover, CART, Pook, and Grand Prix Association of Long Beach which were made to induce him to enter into the employment contract.

71.    Tom Begley could not have ascertained the truth or lack of same of these representations and misrepresentations.

18

72.      Tom Begley relied upon Dover, CART, Long Beach Association of Long Beach, and Pook, and relied upon their fraudulent statements regarding the employment contract.

73.      Tom Begley and Thomas Begley and Associates, Inc. were defrauded by Defendants Dover, CART, Grand Prix Association of Long Beach, and Pook.

74.      Tom Begley and Thomas Begley and Associates, Inc. have been harmed as a result of such reliance.

## SECOND CAUSE OF ACTION

### (Unlawful Interference in a Relationship)

75      Tom Begley individually and as president of the Foundation reasserts and realleges paragraphs 1- 59.

76.      Begley and the Foundation were and are involved in a business relationship.

77.      Dover is and was aware of plaintiff's business relationship

78.      Dover has intentionally and without justification interfered in the said business relationship by refusing to provide support to the Foundation and by improperly terminating Begley's salary and/or support so as to prevent Begley from working with the Foundation and so as to prevent the Foundation from having access to the resources and financial support which it requires to successfully conduct and fulfill its purposes as contemplated under the Fee Agreement.

79      Both Begley and the Foundation have been and are harmed and damaged as a result of the interference in the relationship between Begley and the Foundation.

## THIRD CAUSE OF ACTION

### (Civil Theft)

80.    Tom Begley and Thomas Begley and Associates, Inc. reassert and reallege paragraphs 1- 59.

81.    The Amended and Restated License and Use Agreement, and the Amended and Restated Real Estate License and Lease between the City of St. Petersburg and Thomas Begley and Associates, Inc. were and are "property" as defined in Florida Statues Section 812.012 (4).

82     Dover, CART, Grand Prix Association of Long Beach, and Pook obtained this "property" by fraud, wilful misrepresentation of a future act or a false promise as defined in Florida Statutes Section 812.012 (3) (c).

83.    Dover, CART, Grand Prix Association of Long Beach, and Pook committed theft, as they jointly and separately, knowingly obtained the property of Thomas Begley and Associates with intent to permanently deprive Thomas Begley and Associates of its right to the "property" or a benefit from the "property" as defined under Florida Statutes Section 812.014 (1).

84.    The pattern of deceit, deception, fraud, and misrepresentation committed by Dover, CART, Grand Prix Association of Long Beach, and Pook continued on multiple occasions beginning in mid 2001 and continuing until mid 2003. As such, these defendants violated Chapter 772, Florida Statutes, specifically 772.103 (1) and/or 772.103 (2).

85.    As such, Tom Begley and Thomas Begley and Associates, Inc. have a civil cause of action pursuant to Section 772.104 for treble damages as well as attorney's fees.

## FOURTH CAUSE OF ACTION

### (Reformation or Recission)

86.     Tom Begley individually, Tom Begley and Associates, and Tom Begley as President

of the Foundation reasserts and realleges and incorporates herein paragraphs 1- 59.

87.     The Amended and Restated License and Use Agreement were assigned as the result

of the fraud, misrepresentation and deceits previously alleged.

88.     Alternatively or cumulatively, such assignments and agreements to assign Amended

and Restated License and Lease Agreements were founded upon illusory consideration.

89.     In justice and equity, Begley and Associates and the City of St. Petersburg should be

restored to their former position; that is, the position the parties occupied before Begley and

Associates terminated its License and Use Agreement with the City and the now apparent attempted

assignment by Long Beach (Dover) to CART (and CART to Open Wheel) in violation of the express

terms of the non-assignment clause of the attached Agreement.

90.     Justice and equity require that the parties to those Agreements, Begley and Associates

and the City of St. Petersburg, either be restored to the position which they would have occupied had

the fraudulent and/or illegal assignment of those Agreements not been procured or, alternatively, that

such assignments be rescinded and voided and set aside and held for naught.

WHEREFORE, Plaintiffs Thomas Begley, Thomas Begley and Associates, Inc., and Thomas

Begley as president of the Grand Prix Foundation of St. Petersburg demand the following relief as

well as trial by jury of all issues so triable as a matter of right:

a)      Treble damages plus costs and attorney's fees against Dover, CART, Grand

Prix Association of Long Beach, and Pook for civil theft;

b)    Damages on behalf of the Grand Prix Foundation of St. Petersburg against
Dover and/or Grand Prix Association of Long Beach in an amount to be
determined at trial;

c)    Alternatively or cumulatively, Thomas Begley individually demands damages
against Dover in an amount which would equal his salary of $120,000 per
year for the twelve years promised by Dover to induce him to sign the Fee
Agreement and transfer the rights to the race to Dover;

d)    Alternatively or cumulatively, Tom Begley and Begley and Associates pray
for recission of agreements entered into by them with Dover through its
subsidiary Grand Prix Association of Long Beach for failure of consideration
as the consideration was illusory and fraudulent;

e)    Alternatively or cumulatively Tom Begley and Begley and Associates
demand damages for the fraudulent misrepresentations made by Dover,
CART, Grand Prix Association of Long Beach, and Pook, jointly and/or
severally in an amount to be determined at trial.

f)    Alternatively or cumulatively, Thomas Begley and Thomas Begley and
Associates demand cancellation and/or rescission of the various agreements
between the defendants with the City of St. Petersburg and restoring those
agreements to Thomas Begley and Associates, their rightful owner, plus
damages for their unlawful obtention.

PLAINTIFF PRAYS FOR TRIAL BY JURY OF ALL ISSUES SO TRIABLE AS A
MATTER OF RIGHT.

22

RESPECTFULLY SUBMITTED this 11th day of December, 2003.

Jonathan L. Alpert, Esquire
Florida Bar No.: 121970
THE ALPERT LAW FIRM
401 E. Jackson Street, Suite 1825
Post Office Box 3270
Tampa, Florida  33601-3270
(813) 223-4131 - Tel.
(813) 228-9612 - Fax

## ELECTION OF JURY TRIAL

Mr. Clerk: Plaintiffs elect trial by jury.

Jonathan L. Alpert, Esquire
Florida Bar No.: 121970
THE ALPERT LAW FIRM
401 E. Jackson Street, Suite 1825
Post Office Box 3270
Tampa, Florida  33601-3270